UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                       **REPORT,**
                                       **RECOMMENDATION**
                                       **AND ORDER**

v.

                                       22-CR-00158(LJV)(JJM)

KENNETH SIMMONS II and
DIONDRE SIMMONS,

                            Defendants.

_____

          Co-defendants Kenneth Simmons II and Diondre Simmons are charged in a three-count Indictment [1][1] with drug offenses. Before the court are defendants' pretrial motions to suppress evidence and statements (Greenman Affidavit [45], ¶¶123-35; Saraceno Affirmation [51], §§XI and XII; [55]; [64]), as well as the government's cross-motions for reciprocal discovery. *See* Government's Response to Kenneth Simmons' Pretrial Motions [48] at 29-30; Government's Response to Diondre Simmons' Pretrial Motions [52] at 28.[2]  Having considered the parties' submissions [45, 48, 51, 52, 55, 57, 64, 65], and heard oral argument on March 20, 2023 [58], for the following reasons the government's cross-motions are granted, and I recommend that defendants' motions be denied.

---

[1]      Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]      Defendants confirmed at the March 20, 2023 oral argument that all other portions of their pretrial motions were resolved.

**BACKGROUND**

The charges in this case arise from a July 14, 2021 search warrant signed by Buffalo City Court Judge Patrick Carney for 104 Pierce Street in the City of Buffalo, a 2015 Chevy Camaro, and the person of Kenneth Simmons.  The search warrant was supported by the Affidavit of Adam Imiolo, a Detective with the Erie County Sheriff's Office and the *in camera* testimony of a confidential informant ("CI") and Detective Bart Adams.

During the July 14, 2021 execution of the warrant, defendants were arrested and brought to police headquarters, where Kenneth Simmons was interviewed.  Several minutes after Kenneth Simmons terminated the interview, a law enforcement officer brought Diondre Simmons into the same interview room.  After the officer left and shut the door, the co-defendants began conversing. Unbeknownst to them, the interview room was under surveillance and their exchange was recorded.

Defendants move to suppress the physical evidence seized from the search warrants, as well as their post-arrest statements.

**DISCUSSION**

**A.      Kenneth Simmons' Motion to Suppress Statements**

Simmons moves to suppress his July 14, 2021 post-arrest statements, arguing that he was not advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966) (Greenman Affidavit [45], ¶127), and that his surreptitiously recorded conversation with Diondre Simmons was a "de facto" interrogation in violation of Miranda. Id. at ¶¶128-30; Simmons Affidavit [45-1], ¶¶9-11.

-2-

1.      **Simmons was Advised of his <u>Miranda</u> Rights**

Simmons states that "a law enforcement officer came into the [interview] room and told me that I needed to sign a document which he put before me.  He indicated to me that the document somehow confirmed that he had read me my rights . . . . [B]ecause he told me to sign it I simply did.  I was not aware of the contents nor was I aware that I was giving up any rights". Simmons' Affidavit of Standings [45-1], ¶¶7-8.  Although Simmons claims that the video recording of the interview confirms his version of events (Greenman Affidavit [45], ¶125), it does not. The video recording from the interview room shows Simmons being read his <u>Miranda</u> rights, verbally acknowledging that he understood those rights (17:19:15 – 17:19:32),[3] and later signing the advice of rights form (17:20:48).  Therefore, I recommend that this motion be denied.

2.      **The Surreptitious Recording Did Not Violate Simmons' Fourth or Fifth Amendment Rights**

To the extent that Simmons' claim of a "de facto" interrogation appears to assert a Fifth Amendment violation, it is unpersuasive.  "Even though officers may have hoped that [defendants] would make incriminating statements when left alone, that action was not express questioning. Nor does that action rise to the 'functional equivalent' of a police interrogation, as that action was unlikely to 'subjugate the individual to the will of his examiner and thereby undermine the privilege against compulsory self-incrimination.'" <u>United States v. Swift</u>, 623 F.3d 618, 623 (8th Cir. 2010).

---

[3]      These are from the timestamps on the video recording of the interview room provided by the government.

Nor did the eavesdropping violate the Fourth Amendment.  Electronic eavesdropping can constitute a search under the Fourth Amendment where it violates a reasonable expectation of privacy. *See* <u>Katz v. United States</u>, 389 U.S. 347, 353 (1967) ("[t]he Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment").

However, as District Judge Vilardo reasoned in <u>United States v. Cook</u>, 2021 WL 6133280, *7 (W.D.N.Y. 2021):

> "the defendants were in a *police station interview room*. It is difficult to fathom a place where an objective expectation of privacy would be less. In today's world, one would expect police interview rooms to be equipped with cameras and microphones - if not to get incriminating evidence from suspects, then to record police misconduct and to protect police from false misconduct accusations" (emphasis in original).

The same reasoning applies here. Therefore, I recommend that this motion likewise be denied.

### B.    Diondre Simmons' Motion to Suppress Statements

Like his co-defendant, Diondre Simmons moves to suppress his post-arrest statements because "he was not mirandized". Saraceno Affirmation [51], ¶31; Simmons' Affidavit of Standing [51-1], ¶7.  The government disputes this, but contends that since Simmons immediately invoked his right to remain silent, it is "not seeking to use any of the statements contained in th[e] recorded interview, beyond simple pedigree information". Government's

-4-

Response [52] at 22.[4]  Based on the government's representations, I recommend that this motion be denied as moot.

**C.      Defendants' Motions to Suppress the Fruits of the Search Warrant**

The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause is not a high bar." District of Columbia v. Wesby, __ U.S.__, 138 S. Ct. 577, 586 (2018). In determining the existence of probable cause, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

Detective Imiolo's Affidavit ([66-1] at 2-5) in support of the search warrant, stated that he had "received information from a reliable [CI] that:  KENNETH SIMMONS . . . is actively selling and transporting quantities of marihuana and firearms in the Buffalo area and throughout Erie County"; "that SIMMONS utilizes [a] . . .  2015 Chevrolet Camaro . . . to

---

[4]       "A well-established exception to the Miranda requirement exists for questions relating to general pedigree information." United States v. Durr, 2010 WL 3199887, *7 (W.D.N.Y.), adopted, 2010 WL 3219369 (W.D.N.Y. 2010).  Under that exception, "the solicitation of information concerning a person's identity and background does not amount to custodial interrogation prohibited by Miranda . . . whether that solicitation occurs before . . . or after . . . Miranda warnings are given." United States v. Adegbite, 846 F.2d 834, 838 (2d Cir. 1988).

transport and pick up marijuana and firearms"; and that "[t]he [CI] ha[s] seen SIMMONS conduct narcotics transactions from this residence and vehicle within the past ten . . . days". Id., ¶2(a).  According to Detective Imiolo, the CI positively identified Kenneth Simmons from a DMV photograph, and identified 104 Pierce Street as the address he uses to sell and store marijuana and firearms. Id., ¶¶2(c), (g).  DMV records confirmed that a Camaro was registered to Simmons at 104 Pierce Street, and a check of utility records revealed that he had active utilities at that location. Id., ¶¶2(d), (e).

The search warrant was also supported by the sworn *in camera* testimony of the CI and Detective Bart Adams. [66-2] (redacted transcript); [66-3] (unredacted transcript). Detective Adams explained that the CI was a "convicted felon looking to help [him/herself] out". [66-2] at 2. The CI identified Kenneth Simmons from a DMV photograph as the resident of 104 Pierce Street. Id. at 3.  The CI had purchased marijuana at 104 Pierce Street the previous night, and had made purchases like this from 104 Pierce Street "[a] lot", which the CI then "street" sold. Id. at 4.  According to the CI, handguns were also sold from this residence, which the CI observed. Id.  The CI had also recently observed narcotics and handguns in the Camaro. Id. at 6.

Kenneth Simmons challenges the reliability of the CI, arguing that the CI was "seemingly . . . unreliable[,] not having provided information previously leading to the arrest, conviction or searches of anyone". Greenman Affidavit [64], ¶16.  However, "Circuit precedent does not require informants to have a track record of reliability." United States v. Nelson, 828 F. App'x 804, 807 (2d Cir. 2020) (Summary Order).

Where a CI testifies "under threat of the criminal sanction for perjury . . . such '[a] detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of

-6-

reliability.'" United States v. Hernandez, 85 F.3d 1023, 1028 (2d Cir. 1996). *See also* United States v. Salazar, 945 F.2d 47, 50-51 (2d Cir. 1991) ("a face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false"). "While [a CI's] reliability may be undermined by his criminality, it is bolstered by his face-to-face interview and the fact that he had an incentive to tell the truth lest he be held accountable." United States v. Martin, 801 F. App'x 803, 806 (2d Cir. 2020) (Summary Order).

Kenneth Simmons points to the fact that Judge Carney did not elicit any information concerning the CI's criminal history or past cooperation. Greenman Affidavit [64], ¶16.  However, the absence of that additional information "does not erase the[ ] strong indications of reliability", Martin, 801 F. App'x at 806, which included the CI's own inculpatory statements to Judge Carney. *See* United States v. Rowell, 903 F.2d 899, 903 (2d Cir. 1990) ("the reliability of one of the informants is indicated by his statement, made against his penal interest, that he had personally purchased cocaine from Rowell").

Apart from the CI's reliability, Kenneth Simmons argues that the "search warrant was "blatantly lacking . . .  probable cause to believe that drugs/guns would be found at the premises". Greenman Affidavit [64], ¶18.  For instance, he notes that although the CI described observing "a 40 [millimeter firearm] with a drum on it" at the residence ([66-2] at 5), "[t]here is no indication whether it was a real gun or whether it was operable". Greenman Affidavit [64], ¶10.  However, a common sense interpretation of the CI's testimony was that the CI was referring to actual firearms, rather than toy guns. *See* United States v. Ventresca, 380 U.S. 102, 108 (1965) (the materials supporting the warrant "must be tested and interpreted by . . . courts in

a common sense and realistic fashion"); <u>Walczyk v. Rio</u>, 496 F.3d 139, 157 (2d Cir. 2007) ("a showing of probable cause cannot be negated simply by demonstrating that an inference of innocence might also have been drawn from the facts alleged").

    Kenneth Simmons also points to the CI's testimony that he/she had "bought some weed off of him last night" ([66-2] at 3), and contends that "[i]t is unclear what was meant by that, including the amount and what was specifically sold or purchased". Greenman Affidavit [64], ¶5.  However, it is common knowledge that "weed" refers to marijuana.  In fact, the CI was later asked, "you know that to be weed because you smoke marijuana?". [66-2] at 3.  The redacted testimony preceding that question also identifies the quantity of marijuana purchased.

    Moreover, the government argues that even if it were to be determined that probable cause was lacking, the evidence obtained from the search warrant would still be admissible under the good faith exception of <u>United States v. Leon</u>, 468 U.S. 897 (1984). *See* Government's Response to Supplemental Pretrial Motions [57] at 5-6; Government's Opposition to Supplemental Motion to Controvert [65] at 5-6.  "When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted in objectively reasonable reliance on the subsequently invalidated search warrant." <u>Herring v. United States</u>, 555 U.S. 135, 142 (2009).

    "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." <u>United States v. Clark</u>, 638 F.3d 89, 100 (2d Cir. 2011). There are "four circumstances where an exception to the exclusionary rule would not apply: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so

lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." Id.

   The warrant here was not so facially deficient or so lacking in probable cause that reliance upon it would have been objectively unreasonable. Nor are there any claims that Judge Carney, who had the opportunity to fully question both the CI and Detective Adams under oath, was misled in any fashion or that he abandoned his judicial role.  Therefore, even if the search warrant was determined to be unsupported by probable cause, I would conclude that the good faith exception applies, and recommend that defendants' motions for suppression be denied.

**D.**  **Kenneth Simmons' Motion to Suppress Evidence from the Vehicle**

   Kenneth Simmons alleges that evidence was seized on July 14, 2021 from a Ford Taurus parked at 104 Pierce Street - a vehicle outside the scope of the search warrant. *See* Greenman Affidavit [55], ¶¶15-17. Based on the government's representation that it does not intend to admit or introduce at trial any items recovered from that vehicle (government's Response [57] at 6), I recommend that this motion be denied as moot.

**E.**  **The Government's Cross-Motions for Reciprocal Discovery**

   The government cross-moves for the production of reciprocal discovery pursuant to Rule 16(b). Government's Response to Kenneth Simmons' Pretrial Motions [48] at 29; Government's Response to Diondre Simmons' Pretrial Motions [52] at 28.  "Rule 16 . . . imposes reciprocal discovery obligations on defendants." United States v. Smith, 985 F.Supp.2d

506, 522 (S.D.N.Y. 2013). Defendants have not opposed these requests. Therefore, they are granted.

Pursuant to Fed. R. Evid. 807, the government also "requests advance disclosure of any statements [defendants] propose[ ] to use at . . . trial". Government's Response to Kenneth Simmons' Pretrial Motions [48] at 30; Government's Response to Diondre Simmons' Pretrial Motions [52] at 28.  Likewise, these unopposed requests are granted.


## CONCLUSION

For these reasons, the government's cross-motions (government's Response to Kenneth Simmons' Pretrial Motions [48] at 29-30; government's Response to Diondre Simmons' Pretrial Motions [52] at 28) are granted; and I further recommend that defendants' pretrial motions to suppress evidence and statements (Greenman Affidavit [45], ¶¶123-35; Saraceno Affirmation [51], §§XI and XII; [55]; [64]) be denied.

Unless otherwise ordered by District Judge Lawrence J. Vilardo, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by May 24, 2023.  Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: May 10, 2023

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

-11-