UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

KENNETH SIMMONS II, and                          22-CR-158-LJV-JJM
DIONDRE SIMMONS,                                 DECISION & ORDER

Defendants.

---

## BACKGROUND

The defendants, Kenneth Simmons II and Diondre Simmons,[1] were charged by

indictment with maintaining drug-involved premises in violation of 21 U.S.C. § 856(a)(1)

and 18 U.S.C. § 2[2]; Kenneth also was charged with possessing with intent to distribute

and distributing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and

18 U.S.C. § 2, as well as possessing a firearm in furtherance of drug trafficking crimes

in violation of 18 U.S.C. §§ 924(c)(1)((A)(i) and 2.  Docket Item 32.  The case was

assigned to this Court, and on October 4, 2022, this Court referred the case to United

States Magistrate Judge Jeremiah J. McCarthy for all purposes under 28 U.S.C. §§

636(b)(1)(A) and (B).  Docket Item 34.

---

[1] Because the defendants share a last name, this decision will refer to each
defendant by his first name—that is, Kenneth and Diondre.

[2] The indictment cites "Title 21, United States Code, Section 856(a)(1) and 2,"
*see* Docket Item 32 at 2 (Count 2), but that appears to be a typographical error.  And
that same error was made in the marijuana charge against Kenneth. *See id.* at 1 (Count
1).

On December 5, 2022, Kenneth filed pretrial motions, including a motion to suppress his post-arrest statements and physical evidence seized after execution of a search warrant.  Docket Item 45.  The government responded on December 22, 2022.  Docket Item 48.  About a week later, Diondre filed similar pretrial motions to suppress physical evidence and post-arrest statements, Docket Item 51, and the government responded on January 26, 2023, Docket Item 52.  Finally, on February 27, 2023, Kenneth filed another motion challenging the search warrant and evidence subsequently seized, Docket Item 55, and the government responded early the next month, Docket Item 57.

Judge McCarthy heard oral argument on all the motions to suppress on March 20, 2023.  Docket Item 58.  That same day, he ordered the government to produce the *in camera* testimony supporting the search warrant, and he gave both sides the opportunity to submit additional argument addressing that testimony.[3]  Docket Item 58; *see* Docket Item 59.  Consistent with that order, Kenneth supplemented his motions on April 5, 2023, Docket Item 64, and the government responded within a week, Docket Item 65.

On May 10, 2023, Judge McCarthy issued a Report, Recommendation and Order ("RR&O") finding, *inter alia*, that the defendants' motions to suppress evidence should be denied.  Docket Item 67.  Kenneth objected to the RR&O on May 23, 2023, Docket Item 69, and he filed a memorandum in support of his objections on June 20, 2023,

---

[3] The warrant, redacted minutes of the *in camera* testimony, and unredacted minutes of the *in camera* testimony are filed under seal at Docket Item 66.

Docket Item 77.  On July 6, 2023, the government responded, Docket Item 81, and on July 17, 2023, Kenneth replied, Docket Item 87.

On July 26, 2023, this Court heard oral argument on the objections.  Docket Item 90.  The Court also asked the government to provide a revised redacted version of the *in camera* testimony to defense counsel and requested additional briefing.  *Id.*  Kenneth filed a supplemental memorandum on August 28, 2023, Docket Item 94, and the government responded on September 5, 2023, Docket Item 95.  Although he was given the opportunity to file a reply by September 12, 2023, Docket Item 92, Kenneth did not do so and that deadline now has passed.

## LEGAL PRINCIPLES

A district court may accept, reject, or modify the findings or recommendation of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).

This Court has carefully and thoroughly reviewed the RR&O; the objections, response, and reply; and the materials submitted to Judge McCarthy.  Based on that *de novo* review, and for the reasons that follow, this Court accepts and adopts Judge McCarthy's RR&O.

## FACTS

On July 14, 2021, Buffalo City Court Judge Patrick Carney issued a search warrant for 104 Pierce Street, Buffalo, New York; the person of Kenneth; and Kenneth's

vehicle, a red 2015 Chevrolet Camaro.  Docket Item 66-1 at 1.  The search warrant

authorized law enforcement to search for and seize:

> marihuana and illegally possessed firearm(s), in violation of Article 221 and
> 265 of the New York State Penal Law[;] any personal papers or documents,
> cellular phones-photos [sic] and data therein, or house keys which tend to
> identify the owner, lessee or whomever has custody or control over the
> premises, or items seized[;] and records or evidence that tend to
> demonstrate that an offense or crime was committed or that a particular
> person participated in the commission of an offense or crime . . . .

*Id*.  The warrant application included an affidavit from Erie County Sheriff's Office

Detective Adam Imiolo; it also was supported by the *in camera* testimony of a

confidential informant and of Buffalo Police Department Detective Bart Adams.  *See*

*generally* Docket Item 66.

That same day, law enforcement executed the search warrant and seized

approximately ten pounds of marijuana, digital scales, packaging materials, and three

loaded firearms, including a stolen shotgun.  Docket Item 1 at 5.  The defendants, who

are brothers, were arrested and brought to police headquarters.  Docket Item 67 at 2;

Docket Item 45-1 at 2.  There, Diondre refused to answer any questions.  Docket Item

52 at 22.

Meanwhile, Kenneth was placed in an interview room alone.  At about 5:19 p.m.,

Kenneth was read his *Miranda* rights and said that he understood those rights.  Docket

Item 52-1.  Kenneth then said to an officer, "thank you guys for being so cool"; the

officer responded that "nobody" was going to threaten Kenneth and that he would be

"treated like a gentleman" if he continued to act like one.  *Id*.

A short time later, the officer gave Kenneth the advice-of-rights form, told

Kenneth to read and sign it, and said that "all it does is acknowledge that I read you

your rights."  *Id.*  After Kenneth signed the form, the officer interviewed him until

Kenneth said that he wanted to go before a judge and "get this over with."  *Id.*  The

officer then left the room and the interview ended.  *Id.*

A few minutes later, law enforcement placed Diondre in the same interview room

as Kenneth.  *Id.*  The two remained in the room—without any officers present[4] —until

about 6:09 p.m. when they were escorted out.  *Id.*  Much of that time the two sat silently;

they talked to one another briefly, however, and cameras recorded their conversation.[5]

*Id.*

## DISCUSSION

The RR&O recommends[6] denying Kenneth's motion to suppress his post-arrest

statements, including the recorded conversation with Diondre, and denying both

defendants' motions to suppress the fruits of the search warrant.  Docket Item 67 at 2-9.

For the reasons that follow, this Court accepts those recommendations, and the motions

to suppress are denied.

---

[4] Around 5:54 p.m., an officer briefly came into the room to give shoes to
Kenneth, who was barefoot.  Docket Item 52-1.

[5] The interview room had at least two cameras, as evidenced by the recordings
the government submitted as an exhibit to Docket Item 52.

[6] The RR&O also recommends that Diondre's motion to suppress his post-arrest
statements and Kenneth's motion to suppress evidence from the search of a Ford
Taurus vehicle parked at 104 Pierce Street be denied as moot.  Docket Item 67 at 4-5,
9.  And the RR&O granted the government's cross-motions for discovery.  *Id.* at 9-10.
Neither side objected to those recommendations or orders, and the Court therefore
does not address them further.

I.      **SEARCH WARRANT**

Kenneth argues that the evidence seized at 104 Pierce Street should be suppressed for several reasons: the confidential informant did not testify that the alleged illegal activities took place at 104 Pierce Street; there was no evidence linking the alleged activities to any large-scale drug trafficking operation; and the testimony of the confidential informant was not sufficiently reliable.  Docket Item 77 at 8-11.  Kenneth also argues that he should be allowed to view the unredacted *in camera* testimony.  *Id.* at 10-11.  The government responds that there was probable cause to support the issuance of the warrant and that the lightly redacted transcript does not hinder Kenneth's ability to challenge the warrant.  Docket Item 81 at 6-8.  This Court agrees with the government.

   **A.  Legal Standards**

Under the Fourth Amendment, warrants may be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  To establish probable cause to search, "two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located" at the place to be searched.  *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).  Because probable cause turns on "the assessment of probabilities in particular factual contexts," it is a "fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules."  *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

The issuing officer's task is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.  The "duty" of the reviewing court "is simply to ensure that the magistrate had a 'substantial basis for . . .  conclud[ing]' that probable cause existed."  *Id.* at 238-39. Moreover, "[a] reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (first citing *United States v. Nichols,* 912 F.2d 598, 602 (2d Cir. 1990); and then citing *Travisano,* 724 F.2d at 345).

When the supporting affidavit relies on information from a confidential informant, "courts assess the information by examining the 'totality of the circumstances' bearing upon its reliability."  *U.S. v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 230-31.  Those circumstances include the informant's veracity, reliability, and basis for knowledge, as well as the extent to which an informant's statements are independently corroborated.  *United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004) (internal citations omitted).  In assessing reliability, courts consider how the informant obtained the disclosed information, *see Wagner*, 989 F.2d at 73; whether law enforcement met face-to-face with the informant, *see Gagnon*, 373 F.3d at 236; and the informant's motive for disclosing the information, *see id.*  Even if an informant lacks a prior relationship or proven track record with law enforcement, the informant's "entire account may be credited" when the information "is corroborated in material respects." *United States v. Canfield*, 212 F.3d 713, 719-20 (2d Cir. 2000) (citing *Wagner*, 945 F.2d at 73).

**B.  Application**

Detective Imiolo's affidavit applying for the warrant cites "information from a reliable confidential source"[7] that Kenneth was "actively selling and transporting quantities of marihuana and firearms."  Docket Item 66-1 at 2.  That information included the make, model, and registration number of the vehicle Kenneth used—a red 2015 Chevrolet Camaro—to transport and pick up marijuana and firearms.  *Id.*  The source also reported seeing Kenneth sell drugs from 104 Pierce Street, Buffalo, New York, and from the Chevrolet Camaro, within the past ten days.  *Id.*

The warrant also was supported by the sworn *in camera* testimony of the confidential source and Detective Adams.  *See* Docket Item 66-2 (redacted transcript).  In that testimony, the confidential source positively identified a Department of Motor Vehicle ("DMV") photograph of Kenneth and 104 Pierce as the address where Kenneth sells and stores his marijuana and firearms.  Docket Item 66-1 at 3; Docket Item 66-2 at 2-3.

Kenneth asserts that there is no evidence that the alleged illegal activities actually took place at 104 Pierce Street.  Docket Item 77 at 8.  But the transcript contradicts that assertion: when Judge Carney asked the confidential source "what did you observe at 104 Pierce Street," the source responded, "well I bought some weed off of him last night."  Docket Item 66-2 at 3.  The confidential source was at 104 Pierce to buy marijuana "a lot" and saw "multiple" handguns there, including within days of the testimony.  *Id.* at 3-5.  While the confidential source also testified to seeing drugs and

---

[7] The warrant uses the term "confidential source."  Courts also use the term "confidential informant."  This decision uses both terms interchangeably.

guns in the Camaro and that Kenneth "do[es] everything in the Camaro[,] . . . the car I

seen him in all year," *see id.* at 6, it is clear from the application and the *in camera*

testimony that the confidential source saw Kenneth sell drugs and display weapons at

104 Pierce Street as well.

Kenneth also challenges the confidential source's reliability because the

information provided by the source was not corroborated.  Docket Item 77 at 9.  But that

argument is misplaced.

First, although law enforcement did not corroborate the information with a

controlled purchase, the information was, in fact, corroborated by independent

evidence.  For example, DMV records verified that a red Camaro was indeed registered

to Kenneth at 104 Pierce Street, Buffalo, New York; law enforcement also observed that

vehicle parked at 104 Pierce Street on the day the warrant was issued.  Docket Item 66-

1 at 3.  Moreover, Detective Imiolo verified that Kenneth had active utilities in his name

at that address.  *Id.*  What is more, the confidential informant provided in-person

testimony under oath, and the Second Circuit has noted that a "face-to-face informant"

is generally more reliable because he "runs the greater risk that he may be held

accountable if his information proves false."  *Gagnon*, 373 F.3d at 236; *United States v.*

*Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991).

Finally, Kenneth argues that the informant is not reliable because he or she was

not told that perjury charges or other legal consequences might result if he or she were

lying.  Docket Item 77 at 10.  But the informant was sworn to tell the truth by Judge

Carney, and Kenneth has not cited any caselaw requiring the formal step of threatening

perjury charges before an informant can be found to be reliable.  Especially because the

risks of lying under oath—directly to the judge who administered the oath no less— would be obvious to the informant, this Court finds that the failure to explicitly warn about those risks does not make the informant any less reliable.

For all those reasons and for the reasons in the RR&O, this Court agrees with Judge McCarthy that the confidential informant was reliable and that there was probable cause to issue the warrant to search 104 Pierce Street.

### C.  Good Faith Exception

Judge McCarthy concluded that even if there were no probable cause to issue the warrant, the good faith exception would preclude suppression of evidence.  Again, this Court agrees.

Under the good faith exception, "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" should not be excluded at trial. *United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011).  The government has the burden of showing the "objective reasonableness of the officers' good faith reliance" on the invalidated warrant.  *Clark*, 638 F.3d at 100 (quoting *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992)).  And in the Second Circuit, that means examining four issues: (1) whether the issuing magistrate was knowingly misled; (2) whether the issuing magistrate wholly abandoned his or her judicial role; (3) whether the application so lacked any indicia of probable cause that reliance on it was unreasonable; and (4) whether the warrant was so facially deficient that reliance on it was unreasonable.  *Id.* (citing *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992)).

This Court agrees with Judge McCarthy that the warrant here was not so facially deficient or the application so lacking in probable cause that reliance on the warrant was objectively unreasonable.  Docket Item 67 at 9.  Moreover, Judge Carney was not misled, nor did he abandon his judicial role—particularly because he questioned both the informant and the detective under oath.  *Id.*; *see also* Docket Item 66-2.  Indeed, Detective Adams candidly told Judge Carney that the informant was a convicted felon looking to benefit by providing information, Docket Item 66-2 at 2; Adams noted that the information was corroborated as noted above, *id.* at 6; and Judge Carney actively questioned the informant, *id.* at 3-7.  So all four criteria highlighted by the Second Circuit, *see Clark*, 638 F.3d at 100, cut in favor of applying the good faith exception.

In sum, even if the search warrant were not supported by probable cause, this Court still would deny the motion to suppress evidence based on the good faith exception.

## II.    SUPPRESSION OF STATEMENTS

Judge McCarthy also recommended denying Kenneth's motion to suppress his statements to law enforcement as well as the recorded conversation between Kenneth and his brother Diondre.  Docket Item 67 at 2-4.  Judge McCarthy found that the video recording confirms that Kenneth was read his *Miranda* rights, verbally acknowledged that he understood those rights, and signed the advice-of-rights form before speaking with the police.  *Id.* at 3.  And Judge McCarthy concluded that recording the conversation between the co-defendants while they were in the police interview room did not violate Kenneth's Fourth or Fifth Amendment rights.  *Id.* at 3-4.

Kenneth objects to both conclusions.  Docket Item 77 at 5-6, 11-12.  Relying on his affidavit, *see* Docket Item 45-1, he argues that he did not waive his rights but merely acquiesced in the officer's request to sign the form without reading it or understanding the rights he was giving up.  Docket 77 at 5-6.  Kenneth also argues that he did not know that his conversation with Diondre was being surreptitiously recorded and that he was "tricked" into a *de facto* interrogation when officers brought Diondre into the same room.  *Id.*; Docket Item 45-1.

For the reasons that follow, this Court agrees with Judge McCarthy and denies the motion to suppress Kenneth's statements.

### A.  Statements to Law Enforcement

To establish a valid waiver of the right to remain silent, the government bears the burden of showing that the defendant's waiver was (1) "knowing," that is, "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," and (2) "voluntary," that is, "the product of a free and deliberate choice rather than intimidation, coercion, or deception."  *United States v. Murphy*, 703 F.3d 182, 192 (2d Cir. 2012) (citations and internal quotation marks omitted).  The government must prove a waiver by a preponderance of the evidence.  *United States v. Gaines*, 295 F.3d 293, 297 (2d Cir. 2002) (citation omitted).

Here, Kenneth's signature on the advice-of-rights form and his recorded interaction with the officers more than meet that burden.  The video shows that around 5:19 p.m., Kenneth was read his *Miranda* rights and said that he understood them.  Docket Item 52-1.  About a minute later, after some cordial conversation, the officer

explained that the form acknowledged Kenneth's being read his rights, and Kenneth signed the form.  *Id.*

Nothing about this exchange suggests that Kenneth was not fully aware of his rights or that his decision to speak with the officer was anything other than the "product of [his] free and deliberate choice."  *Murphy*, 703 F.3d at 192.  The officer matter-of-factly recited *Miranda* warnings, asked Kenneth whether he understood, and explained the advice-of-rights form.  Docket Item 52-1.  And nothing in the video suggests that the officer intimidated, coerced, or deceived Kenneth into signing the form and answering questions.

Kenneth relies only on his self-serving affidavit, which states that he does not remember being advised of his rights and that he signed the form without understanding its contents.  Docket Item 45-1 at 2.  Moreover, Kenneth does not dispute the authenticity or accuracy of the video but argues that the video supports his version of events.  Docket Item 77 at 5-6.  Like Judge McCarthy, this Court disagrees and finds that Kenneth knowingly and voluntarily waived his *Miranda* rights.

### B.  Statements Made During Conversation with Co-Defendant

1. Fourth Amendment

If a suspect has a reasonable expectation of privacy in a conversation, the Fourth Amendment generally requires the government to obtain a warrant before eavesdropping on the suspect's words or conversations.  *U.S. v. Colon*, 59 F. Supp. 3d 462, 465 (D. Conn. 2014); *see also Katz v. United States*, 389 U.S. 347, 353-59 (1967) (suspect had an expectation of privacy from electronic eavesdropping of his telephone call made in public telephone booth); *United States v. Mankani* 738 F.2d 538, 542-45

13

(1984) (no reasonable expectation of privacy from police eavesdropping on suspect's conversation through hole in wall from adjoining hotel room).  Courts use a two-step inquiry to evaluate the legitimacy of a privacy expectation: (1) whether the individual had a subjective expectation of privacy and (2) whether that expectation of privacy was one that society accepts as reasonable.  *United States v. McKenzie*, 13 F.4th 223, 232 (2d Cir. 2021) (citation omitted).

As the RR&O notes, both Judge McCarthy and this Court recently addressed a nearly identical situation in *United States v. Cook*, 2021 WL 6133280 (W.D.N.Y. Dec. 27, 2021) (accepting and adopting Judge McCarthy's report and recommendation).  There, the co-defendants moved to suppress their conversation which was recorded when they were sitting together in a police station interview room.  *Id.* at *7.  This Court agreed with Judge McCarthy that under those circumstances, suppression was not warranted.  *Id.*  The Court explained that "[i]n today's world, one would expect police interview rooms to be equipped with cameras and microphones"; indeed, the Court observed that "[i]t is difficult to fathom a place where an objective expectation of privacy would be less."  *Id.* at *7.   This Court then discussed several cases, including circuit court cases, that supported that conclusion.  *Id.* at *7-8.

Here, Kenneth and Diondre sat unsupervised in an interview room at a police station for about half an hour.  Docket Item 52-1.  Even if they subjectively expected that their conversation would be private, that is not an expectation that society would consider reasonable.  *Cook*, 2021 WL 6133280, at *7-8 (collecting cases); *cf. Colon*, 59 F. Supp. 3d at 467 (not reasonable to believe that the inside of a police car had been

"reserved—like the telephone booth in *Katz*—for [the defendant's] benefit as a temporary sanctum for private conversations").

Furthermore, while this Court acknowledged in *Cook*, and again acknowledges here, that there may be exceptions to that rule—that is, circumstances giving rise to a reasonable expectation of privacy even in a police interrogation room, *see Cook*, 2021 WL 6133280, at *8—those limited circumstances are not present here.  For example, there is no evidence that the officers deceived or misled Kenneth and Diondre into thinking that their conversation would not be monitored,[8] *id.,* and the video shows that officers simply brought Diondre into the room and left him there with his brother.  Docket Item 52-1.

In fact, the co-defendants' expectation of privacy here was arguably less than in *Cook.*  In *Cook*, the defendants were in the same interrogation room because one of them asked to speak with the other.  *Cook*, 2021 WL 6133280, at *7.  Here, there is no suggestion that either defendant sought to speak with the other.

Recording the interview-room conversation between the defendants therefore did not violate either defendant's Fourth Amendment rights.

### 2. Fifth Amendment

To trigger *Miranda* advice-of-rights requirements, a person must be "in custody" and subject to "interrogation."  *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).  An interrogation occurs when a suspect is "subjected to either express questioning or its

---

[8] As in *Cook*, it is not clear whether the cameras and microphones were visible to the defendants.  *Id.* at *8.   But for the same reasons explained in *Cook*—specifically, the defendants were in a room in a police station and there was no evidence of deception— that is of no moment.

functional equivalent" and his or her statements are "the product of words or actions on the part of the police" that "were reasonably likely to elicit an incriminating response." *United States v. Familetti*, 878 F.3d 53, 57 (2d Cir. 2017) (citing *Innis*, 446 U.S. at 300-01).

Whatever the intent of the officers involved here, the recorded conversation between Kenneth and Diondre was not interrogation or its functional equivalent. Except for a brief exchange about shoes, no officer asked any questions or even spoke with Kenneth after he said he wanted to see a judge. Docket Item 52-1. And while Kenneth asserts that he was "tricked into allowing [his co-defendant and brother] to come into the room with [him]," *see* Docket Item 45-1 at 2, he does not explain how leaving him alone with his co-defendant was a "trick[]" or otherwise the equivalent of a police interrogation. *See* Docket Item 67 at 3-4.

Kenneth notes that he invoked his rights before the recorded conversation, and he argues that he therefore had a heightened expectation of privacy not present in *Cook*. Docket Item 87 at 3. But the defendant in *Cook* also told officers that he was done speaking with them before the recorded conversation. *See* 2021 WL 6133280, at *7. And as discussed above, Kenneth arguably had less of an expectation of privacy because unlike one of the defendants in C*ook*, he did not ask to talk with Diondre.

Accordingly, Kenneth's Fifth Amendment rights were not violated, and suppression of his statements is not warranted.

## **CONCLUSION**

For the reasons stated above and in Judge McCarthy's RR&O, the defendants'

motions to suppress evidence and their statements (Docket Items 45, 51, 55, 64) are

DENIED.

SO ORDERED.

Dated:        October 11, 2023
              Buffalo, New York


_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE